IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

CHRISTOPHER J. HAMLIN,

                OPINION AND ORDER

      Plaintiff,

                13-cv-202-bbc

  v.

LIEUTENANT WENZEL,
C.O. II BURNS, C.O. II ROSS,
C.O. II MOUNGEY, C.O. BOGUTSKI,
C.O. LOBIANCO and DEREK SCHOUTEN,

      Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

In a May 1, 2013 order, I allowed pro se plaintiff Christopher J. Hamlin to proceed on the following claims: (1) defendants Lieutenant Wenzel and C.O. Bogutski used excessive force against plaintiff; (2) defendants Wenzel, C.O. II Burns, C.O. II Ross, C.O. Lobianco and John Doe (now named as Derek Schouten) engaged in an unlawful strip search; and (3) defendant C.O. Moungey subjected plaintiff to inhumane conditions of confinement. Currently before the court is defendants' motion for partial summary judgment based on plaintiff's failure to exhaust his administrative remedies.

Also before the court is plaintiff's "Motion to hold defendant's summary judgment motion in abeyance pending limited discovery," in which he states that he is requesting defendants to provide him a copy of all administrative rules and policies regarding the administrative review process in Wisconsin prisons. (Plaintiff is incarcerated at a United

1

States Penitentiary in Kentucky). The court has already given plaintiff a one-month extension to file his response, so I will deny his motion for further extensions. It is particularly unnecessary to give plaintiff further time to respond because he has essentially responded to the motion through his declaration attached to his motion for an extension of time. In his declaration, he agrees with defendants' factual summary of the administrative grievances he filed and admits that although he filed grievances regarding each of his claims under the inmate complaint review system, he did not file an appeal of the disciplinary proceeding held following the incident in which he claimed excessive force was used against him. Therefore, I will proceed to consider the merits of defendants' motion.

After considering the parties' submissions, I will grant defendants' motion regarding the excessive force claim because plaintiff failed to appeal the result of his disciplinary proceeding, but deny the motion as to the strip search claim because defendants have not met their burden of showing that plaintiff did not properly exhaust his administrative remedies. Further, I will construe defendants' motion as seeking clarification on the conditions of confinement claim, and clarify the claim as relating only to the low temperature of his cell.

OPINION

A. Exhaustion Procedures

Under 42 U.S.C. § 1997e(a), a prisoner must exhaust all available administrative remedies before filing a lawsuit in federal court, meaning that the prisoner must "file

2

complaints and appeals in the place, and at the time, the prison's administrative rules require." Burrell v. Powers, 431 F.3d 282, 285 (7th Cir. 2005) (citing Pozo v. McCaughtry, 286 F.3d 1022, 1025 (7th Cir. 2002)). To satisfy exhaustion requirements, the prisoner must give the prison grievance system "a fair opportunity to consider the grievance," which requires that the complainant "compl[y] with the system's critical procedural rules," Woodford v. Ngo, 548 U.S. 81, 95 (2006) and that the grievance "contain the sort information that the administrative system requires." Strong v. David, 297 F.3d 646, 649 (7th Cir. 2002). Section 1997e(a) requires more than simply notifying the prisoner grievance system once; a prisoner must take any administrative appeals available under the administrative rules. Burrell, 431 F.3d at 284-85. Because exhaustion is an affirmative defense, defendants bear the burden of establishing that plaintiff failed to exhaust. Jones v. Bock, 549 U.S. 199, 216 (2007).

Wisconsin inmates have access to an administrative grievance system governed by the procedures set out in Wis. Admin. Code §§ DOC 310.01-310.18. Under these provisions, prisoners start the complaint process by filing an inmate complaint with the institution complaint examiner within 14 days of the occurrence giving rise to the complaint. Wis. Admin. Code § DOC 310.09. The complaint examiner may investigate inmate complaints, reject them for failure to meet filing requirements, recommend a disposition to the appropriate reviewing authority (the warden or the warden's designee) or direct the inmate to attempt to resolve the complaint informally. Id. at §§ 310.07(2), 310.09(4), 310.11, 310.12. If the institution complaint examiner recommends granting the complaint or

dismissing it on its merits, the appropriate reviewing authority may dismiss, affirm or return the complaint for further investigation. Id. at § 310.12. If an inmate disagrees with the decision of the reviewing authority, he may appeal. Id. at § 310.13.

A different exhaustion process exists for issues related to the disciplinary process. Wis. Admin. Code § DOC 310.08(2)(a) states that the inmate complaint review system may not be used to address "any issue related to a conduct report, unless the inmate has exhausted the disciplinary process in accordance with ch. DOC 303." Wis. Admin. Code § DOC 310.08(2)(a). (The phrase "any issue related to a conduct report" is not further defined in the regulations.) Under this disciplinary process, the inmate is given a hearing at which he may make statements on his own behalf. Wis. Admin. Code §§ DOC 303.75(4), 303.76(1)(e)1. If he disagrees with the outcome of the hearing, he must appeal the disciplinary officer's decision to the warden within the allotted time period. Wis. Admin. Code §§ DOC 303.75(6), 303.76(7). After exhausting this appeal process, an inmate may use the inmate complaint review system to challenge procedural issues only. Wis. Admin. Code § DOC 310.08(3).

B. Plaintiff's Claims

1. Excessive force

Plaintiff is proceeding on a claim that defendants Lieutenant Wenzel and C.O. Bogutski used excessive force against him on January 1, 2013 in the course of transporting him to temporary lockup status in the segregation unit. For his behavior, plaintiff was given

4

a conduct report for disobeying orders, disrespect and disruptive conduct. A disciplinary hearing was held (which plaintiff refused to attend) and plaintiff was found guilty of all three counts. The parties agree that plaintiff did not appeal his disciplinary conviction. (Plaintiff says that he does not "see how it is relevant that I did not appeal a disciplinary conviction that I am not challenging.") The parties agree also that before the disciplinary proceedings, plaintiff filed a grievance in the inmate complaint review system (No. WCI-2013-330) regarding the use of force against him. This grievance was rejected by the institution complaint examiner as outside the scope of the inmate complaint review system because it was related to a conduct report. Plaintiff appealed the rejection but it was upheld.

Unfortunately for plaintiff, this means that he has failed to exhaust his excessive force claim. As stated by the administrative regulations and the rejection of his inmate complaint review system grievance, the proper way for plaintiff to exhaust his claim regarding the incident for which he was disciplined was to exhaust the disciplinary process. Plaintiff's failure to understand the relevance of the disciplinary appeal does not excuse him from this requirement. Accordingly, I will grant defendants' motion for summary judgment on this claim. Because plaintiff was proceeding against defendant C.O. Bogutski on the excessive force claim only, and that claim is being dismissed, I will dismiss Bogutski from the case.

2. Strip search

Plaintiff is proceeding on a second claim, that defendants subjected him to an unlawful strip search upon his arrival in the segregation unit. Again, defendants argue that plaintiff

5

failed to exhaust his administrative remedies regarding this claim, stating:

> this Court's screening order indicated that Hamlin's claim was dependent on whether Hamlin was restrained for legitimate penological reasons following the incident on January 1, 2013. (Dkt. # 10, Screening Order at pg. 9). Because Hamlin failed to engage in the disciplinary hearing and appellate process involving the behavior leading up to the strip search, Hamlin is unable to show that he was not restrained for legitimate penological reasons. The defendants' decision to strip search Hamlin in the manner they chose was dependent on the behavior outlined in the unchallenged conduct report.  As such, defendants are entitled to summary judgment on this claim as well.

Dfts.' Br., dkt. #22 at 8.  Defendants are referring to the following language in the May 1 order:

> Plaintiff alleges that defendants Wenzel, Ross, Burns and Lobianco did not give him an opportunity to consent to a "regular" strip search before performing a "staff-assisted" search, which I interpret to mean a visual inspection instead of a manual one.  In some circumstances failure to allow a prisoner to comply with a visual inspection before conducting a manual inspection could constitute an unreasonable strip search if there was no legitimate penological reason for proceeding directly to the more intrusive manual inspection.

Dkt. #10 at 8.  It seems clear that the facts surrounding the use of excessive force are at least in some way related to the facts surrounding the subsequent strip search of plaintiff.  The problem with defendants' argument is that plaintiff's grievance regarding the strip search (No. WCI-2013-2874) was *not* rejected as being related to a conduct report.  Rather, the institution complaint examiner recommended dismissing the grievance "with modification," stating as follows:

> DAI Policy # 310.00.01, Inmate Complaint Regarding Staff Misconduct, states in part, "If a complaint alleges staff sexual misconduct involving an inmate, the ICE shall not interview the complaining inmate or anyone else, but instead shall immediately refer the complaint to the Warden to ensure processing in compliance with Executive Directive 16A.

6

> Based on the above, this complaint is dismissed with modification. The modification being that it has been forwarded to the Warden's Office for determination on whether or not an Executive Directive 16A violation occurred. No further action is necessary by this office.

Dkt. #24, Exh. D at 2. Plaintiff appealed this decision all the way to the office of the Secretary, which upheld the dismissal. At each step, plaintiff was notified that the matter had been referred to the warden to resolve under Executive Directive 16A, so it is unclear why plaintiff would think that he would have to pursue this grievance through the disciplinary process. Plaintiff seems to grasp this issue when he states in his declaration: "his claim of sexual assault, irrespective of whether he is eventually deemed to have exhausted under the PLRA, is not so easily dismissed under DOJ regulations recently adopted to implement the Prison Rape Elimination Act." Dkt. #32 at 5.

Whether or not "Executive Directive 16A" was actually promulgated pursuant to the Prison Rape Elimination Act is beside the point; the crux of the matter is that plaintiff was led to believe that his grievance was being resolved in the proper venue—a parallel administrative process having to do with sexual assault allegations. Defendants do not even note in their brief that plaintiff's grievance was handled in this fashion, much less explain what type of process Executive Directive 16A provides in the context of the various administrative provisions detailed above. Without this information, it is impossible to tell whether plaintiff properly exhausted this claim. Because defendants have failed to meet their burden to prove that plaintiff did not exhaust his administrative remedies I will deny their motion for summary judgment on this claim.

3. Conditions of confinement

Plaintiff is proceeding on a claim that defendant Moungey subjected him to unconstitutional conditions of confinement. Defendants state that the May 1 screening order is unclear as to the contours of this claim. Although plaintiff had a number of allegations about the low temperature of his cell, the presence of urine and feces in the cell, the provision of "seg loaf" for meals, lack of soap and lack of toothbrush, the only claim considered in the screening order was the cold cell:

> Plaintiff alleges that he was left in a "very cold" cell in segregation with no clothes, bed, sheets or blanket for multiple hours. Plaintiff also alleges that the conditions in his cell posed a substantial risk to his mental health. Although it is not clear how long plaintiff was in the cell with no clothes or how cold the cell was, he has alleged the minimum facts necessary to state a claim upon which relief may be granted. Prisoners have a right to "protection from extreme cold" and taken in combination, the conditions of low cell temperature, lack of clothing and bedding may establish an Eighth Amendment violation. Dixon v. Godinez, 114 F.3d 640, 642-44 (7th Cir. 1997) (for Eighth Amendment claims based on low cell temperature, courts examine factors such as "the severity of the cold; its duration; whether the prisoner has alternative means to protect himself from the cold; the adequacy of such alternatives; as well as whether he must endure other uncomfortable conditions as well as cold").

Dkt. #10, at 11-12. Defendants concede that plaintiff has exhausted his administrative remedies regarding his cold cell because he filed a grievance about it, so they are not moving for summary judgment on this claim. Rather, I understand them to be seeking clarification about the contours of plaintiff's conditions of confinement claim.

I conclude that plaintiff may proceed only on his temperature claim, for two reasons. First, plaintiff has not filed a motion for reconsideration of the May 1 screening order regarding the other conditions of confinement mentioned in his complaint, so there is no

8

reason to revisit that decision. Second, as defendants note, the record of plaintiff's grievance history makes clear that the only conditions of confinement grievance plaintiff filed was the one regarding the temperature of his cell. Therefore, even had plaintiff been allowed to proceed on conditions of confinement claims regarding the other problems, those claims would have been dismissed for plaintiff's failure to exhaust his administrative remedies.

ORDER

IT IS ORDERED that

1. Plaintiff Christopher Hamlin's "Motion to hold defendant's summary judgment motion in abeyance pending limited discovery," dkt. #31, is DENIED.

2. Defendants' motion for summary judgment based on plaintiff's failure to exhaust administrative remedies, dkt. #21 is GRANTED IN PART and DENIED IN PART. Plaintiff's excessive force claim is DISMISSED without prejudice, but he may proceed on his claim regarding an unconstitutional strip search.

3. Defendant C.O. Bogutski is DISMISSED from the case.

4. Defendants' motion for clarification regarding the contours of plaintiff's conditions of confinement claim, dkt. #21, is GRANTED. Plaintiff's conditions of

confinement claim is limited to a claim concerning the temperature of his cell.

Entered this 6th day of December, 2013.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge