IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

CHRISTOPHER J. HAMLIN,

                     Plaintiff,

      v.

LIEUTENANT WENZEL,
C.O. II BURNS, C.O. II ROSS,
C.O. II MOUNGEY, C.O. LOBIANCO
and DEREK SCHOUTEN,

                  Defendants.

OPINION and ORDER

13-cv-202-jdp[1]

---

In this case brought under 42 U.S.C. § 1983, pro se prisoner Christopher J. Hamlin, currently a prisoner incarcerated at the United States Penitentiary-Big Sandy, located in Inez, Kentucky, is proceeding on claims that prison officials at the Waupun Correctional Institution engaged in an unlawful strip search and subjected him to inhumane conditions of confinement by placing him in a cold cell. Defendants have moved for summary judgment on both claims.

There are several issues to resolve before discussing the merits of plaintiff's claims. First, defendants point out that plaintiff appears to have abandoned his claim about being placed in a cold cell. Although in his brief plaintiff initially presents the cold cell as an issue to be decided at summary judgment, he goes on to state that "[t]he Court permitted [plaintiff] to proceed on two claims, but [he] only persists in the unlawful strip search," and then does not discuss the claim in the body of his brief. I will dismiss this claim as abandoned

---

[1] This case was reassigned to me pursuant to a May 16, 2014 administrative order. Dkt. 50.

and dismiss defendant Moungey from the case as the cold cell claim is the only claim against him.

Second, defendants argue that they should be granted summary judgment on the strip search claim because plaintiff's opposition materials were untimely filed without adequate explanation. Plaintiff's response was originally due March 24, 2014. Plaintiff failed to meet this deadline, and defendants filed a letter stating that they did not intend to file a reply. After seeing defendants' letter, plaintiff filed an unsigned document titled "Motion to Ascertain Status," dated May 5, 2014 and received by the court on May 9, in which plaintiff stated that he mailed his response to both the court and defendants "around March 15."

On May 14, 2014, Magistrate Judge Stephen Crocker issued an order granting plaintiff's motion and giving him until May 21, 2014 to submit a copy of his summary judgment response along with a declaration explaining the reason for the late filing. On May 21, the court received a signed copy of plaintiff's "Motion to Ascertain Status" but did not receive a copy of plaintiff's summary judgment response and explanation for the late filing until June 4, 2014. The summary judgment materials are dated March 11, the declaration about the late filing is dated May 22 and the envelope containing the packet of documents is dated June 2.

Defendants provide three reasons they are suspicious of plaintiff's claim that he mailed out his opposition materials in March: (1) he does not explain why he waited until May to file his "Motion to Ascertain Status" after he was informed by a March 31 letter that response materials were never filed, or why he missed the second, May 21 deadline to file a copy of his materials; (2) it would be unusual for two different copies of the original response (one to the court, one to defendants) to get lost in transit; and (3) they believe that the "odd

2

self-serving" certificate of service included with his response materials was backdated to corroborate plaintiff's story; the certificate states that plaintiff sent the DOJ its copy "[b]y placing same in the hands of the authorities at the prison mailroom on Tuesday March 11, 2014 at USP Big Sandy, with sufficient postage to carry it to its destination."

To be clear, I share defendants' suspicions about whether plaintiff actually attempted to file his response materials in time. In particular, it is unlikely that two separate mailings to defendants and the court would be lost, and plaintiff's certificate of service does seem to be written in a way that anticipated there would be problems with the mailings. However, plaintiff has submitted a declaration stating that he mailed the items around March 15. The only way to resolve the issues of credibility raised by the parties' submissions would be to have a mini-trial on this issue, which seems like an imprudent use of court resources, particularly seeing as plaintiff is currently located in Kentucky. Even crediting plaintiff's version of events, defendants argue that plaintiff failed to diligently rectify the original problem or respond to the court's amended deadline. I agree that plaintiff should have responded more quickly, but given the lack of prejudice to defendants coupled with the serious nature of the claims at issue, I decline to disregard plaintiff's late submissions or otherwise summarily grant summary judgment to defendants. Instead I will accept plaintiff's response materials as properly filed.

Finally, defendants note that while plaintiff's brief and declaration contain a detailed version of how he believes he was sexually assaulted during the strip search, plaintiff filed only responses to defendants' proposed findings of fact rather than including separate proposed findings of fact outlining his own version of events as suggested by this court's summary judgment procedures (which were attached to the July 8, 2013 preliminary pretrial

conference order in this case, Dkt. 16). Defendants argue that because plaintiff has failed to formally submit proposed findings detailing his version, they should be granted summary judgment on this claim. I will not grant this request. Although "it [is] not the district court's job to sift through the record and make [plaintiff's] case for him," *United States v. 5443 Suffield Terrace, Skokie, Ill.*, 607 F.3d 504, 510 (7th Cir. 2010), in this case plaintiff's account of what happened during the strip search is straightforward and evident from his declaration, so I will consider the declaration in ruling on the motion for summary judgment. After doing so, I conclude that there are issues of disputed material fact on the strip search claim, so I will deny defendants' motion for summary judgment.

From the parties' proposed findings of fact and supporting evidence, I find that the following facts are material and undisputed unless indicated otherwise.

### UNDISPUTED FACTS

At all times relevant to this matter, plaintiff Christopher Hamlin was incarcerated at the Waupun Correctional Institution (WCI). All of the defendants worked at WCI during the relevant time: Jason Wenzel was a correctional sergeant and Derek Schouten, Scott Ross, Matthew Burns, Anthony Lo Bianco, and Andrew Moungey were correctional officers.

All inmates who go from general population to segregation, or who change status within segregation, undergo a strip search as a means to identify and confiscate contraband. This is done for the safety of all staff and inmates. The inmates housed in segregation typically present a high security risk, including injury to themselves or others.

On January 1, 2013, defendant Wenzel approached plaintiff's cell and instructed plaintiff to come to the front of the cell and put his hands through the trap, because he was

being placed in temporary lockup (TLU) after receiving a conduct report. Plaintiff responded by saying "Well, it's going to be a while because I'm going to pack up some stuff." Wenzel told plaintiff that he needed to come to the door immediately. Plaintiff responded by yelling, "Don't fucking push me dude I'm already going to the hole, you don't need to push me." After numerous directives to come to the door, plaintiff finally complied. During the process of trying to gain plaintiff's compliance, plaintiff made "derogatory comments" about being placed in TLU and comments to neighboring inmates such as "I'm trying to go out in style." (Plaintiff denies that he made these statements but does not provide admissible evidence supporting that assertion.)

Once plaintiff was restrained, he was brought out on F-range, where a brief search was conducted. Plaintiff was escorted down the back stairway of the cell hall by defendants Wenzel and Schouten, along with Sergeant Lieber and Officers Reinke and Bogutski. In the stairwell, Reinke stated that plaintiff had contraband in his pants because he observed a bulge in plaintiff's groin area. Wenzel directed staff to conduct a pat search. Bogutski conducted the search and found a bundle of approximately six pens around plaintiff's groin area.

The parties dispute precisely what occurred next. According to defendants, Wenzel asked plaintiff if he had any contraband in his pants and plaintiff responded "just my dick." Wenzel placed his hand on plaintiff's shoulder "in a calming manner" and told him that when they walked out of the cell hall, he did not want plaintiff making more sarcastic comments to staff or to other inmates and directed him to follow staff's directives. According to plaintiff, Wenzel asked him what "those" (the pens) were, and he responded "you know

5

what they are." Wenzel then placed his hand on plaintiff's shoulder "where the web-part of his hand was in contact with plaintiff's neck" and told him to "stop acting like a child."

Plaintiff told Wenzel to get his hands off him (the parties dispute how polite plaintiff was about this; defendants state that plaintiff said "get your motherfucking hands off me motherfucker," which plaintiff denies) and attempted to pull away from the escort hold. Wenzel ordered officers to direct plaintiff to the ground and stated, "Stop resisting." Schouten and Bogutski directed plaintiff to the floor. One of the officers made a "10-10" call for backup. More officers arrived and plaintiff was secured and placed in leg restraints. Staff conducted a brief wellness check on plaintiff and then escorted him to the segregation unit for placement in control status. During the escort, staff had to direct plaintiff several times to keep facing forward because he kept ignoring staff directives. Defendant Schouten asked plaintiff if he had any other contraband on him and he stated, "No."

Upon arriving in the segregation unit, plaintiff was tethered to the strip cell door and Nurse DeYoung provided medical attention to plaintiff's lip and teeth.

Following the medical assessment, plaintiff was strip searched by staff. The parties dispute some of the details. According to defendants, defendants Ross and Burns controlled plaintiff's wrists. Defendant Lo Bianco started by cutting up the right side of plaintiff's state-issued pants and then cut up the left side, cut the waist band, and cut off his underwear. Lo Bianco also took off plaintiff's shoes and socks.

According to plaintiff, the officers "did not permit [plaintiff] to comply with a normal, visual, strip search." Defendant Wenzel held a Taser in front of plaintiff's face and told him that "[he] better comply with his commands or [he] would be dealt with accordingly." Wenzel told plaintiff to kneel down. Defendants Ross and Burns each held one of plaintiff's

arms and defendant Schouten stood on the chain between plaintiff's leg shackles. Defendant Lo Bianco began cutting off his clothes. Lo Bianco proceeded to physically manipulate plaintiff's penis and squeeze his testicles while doing so. Lo Bianco then spread plaintiff's buttocks apart and attempted to force his thumb in plaintiff's anus. Plaintiff states that he "did not make a single sound or movement during this entire time, because of the threat that Wenzel had made at the beginning of it."

In the course of the strip search, defendant Lo Bianco found a bag of coffee hidden in plaintiff's underwear.

## OPINION

To succeed on a motion for summary judgment, the moving party must show that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Brummett v. Sinclair Broadcast Group, Inc.*, 414 F.3d 686, 692 (7th Cir. 2005). All reasonable inferences from the facts in the summary judgment record must be drawn in the nonmoving party's favor. *Baron v. City of Highland Park*, 195 F.3d 333, 338 (7th Cir. 1999). If the nonmoving party fails to establish the existence of an essential element on which that party will bear the burden of proof at trial, summary judgment for the moving party is proper. *Celotex*, 477 U.S. at 322.

The Court of Appeals for the Seventh Circuit has explained that searches in prison should be analyzed under the Eighth Amendment and that prison strip searches are lawful unless they are "conducted in a harassing manner intended to humiliate and inflict

7

psychological pain." *Calhoun v. DeTella*, 319 F.3d 936, 939 (7th Cir. 2003); *Fillmore v. Page*, 358 F.3d 496, 505 (7th Cir. 2004). Stated another way, the question is whether there was any legitimate penological reason for both the search and its scope. *Whitman v. Nesic*, 368 F.3d 931, 934-35 (7th Cir. 2004); *see also Vasquez v. Raemisch*, 480 F. Supp. 2d 1120, 1131-32 (W.D. Wis. 2007) (stating that case law "supports a conclusion of heightened protection for a manual as opposed to visual inspection."). Although defendants deny plaintiff's version of events, they concede that his allegations regarding defendant Lo Bianco squeezing his testicles and attempting to force a thumb in his anus have created disputes of material fact even given evidence that plaintiff was being noncompliant with prison staff.[2] Because a reasonable jury believing plaintiff's version of events could conclude that defendant Lo Bianco did not have a legitimate penological reason to conduct the manual strip search in the manner he did, defendants' motion for summary judgment must be denied with regard to defendant Lo Bianco. In addition, the motion must be denied regarding defendants Wenzel, Ross, Burns, and Schouten for assisting Lo Bianco or failing to intervene. *Miller v. Smith*, 220 F.3d 491, 495 (7th Cir. 2000) ("'An official satisfies the personal responsibility requirement of § 1983 if she acts or fails to act with a deliberate or reckless disregard of the plaintiff's constitutional rights.'") (quoting *Crowder v. Lash*, 687 F.2d 996, 1005 (7th Cir. 1982)). All of plaintiff's claims regarding the strip search will have to be resolved at trial.

---

[2] Defendants also raise a qualified immunity defense in their brief-in-chief, but I do not understand them to be asserting that the defense would be available if plaintiff's version of events were proven true.

## ORDER

IT IS ORDERED that

1.  Plaintiff Christopher J. Hamlin's Eighth Amendment conditions of confinement claim regarding placement in a cold cell is DISMISSED.

2.  Defendant Andrew Moungey is DISMISSED from the case.

3.  Defendants' motion to disregard plaintiff's late summary judgment response, Dkt. 58, is DENIED.

4.  Defendants' motion for summary judgment, Dkt. 37, is DENIED regarding plaintiff's Eighth Amendment strip search claims. The case will proceed to trial on those claims.

Entered this 28th day of July, 2014.

BY THE COURT:

/s/
JAMES D. PETERSON
District Judge