IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

CHRISTOPHER HAMLIN,

            Plaintiff,                        ORDER

    v.                                              13-cv-202-jdp

JASON WENZEL, MATTHEW BURNS,
SCOTT ROSS, ANTHONY LO BIANCO,
and DEREK SCHOUTEN,

            Defendants.

---

In this case brought under 42 U.S.C. § 1983, plaintiff Christopher Hamlin is proceeding on claims that prison officials at the Waupun Correctional Institution subjected him to an unlawful strip search on January 1, 2013. Trial is set for March 16, 2015, with the final pretrial conference scheduled for Thursday, March 12.

Currently before the court are the parties' motions in limine. The purpose of this order is to provide preliminary rulings on the motions in limine. I will take limited argument on these motions at the final pretrial conference.

Attached to this order are nearly final drafts of the voir dire questions, introductory and post-trial jury instructions, and verdict.

DEFENDANTS' MOTIONS

Defendants have filed three motions in limine (all contained in Dkt. 78):

**1.**      **Defendants' motion to exclude lawsuit history and newspaper articles**

Defendants seek to exclude testimony or argument concerning (1) the lawsuit history of any defendant or other DOC employee; and (2) newspaper articles about alleged

1

wrongdoing by DOC employees (I understand defendants to be referring to a specific series of articles about alleged abuse of prisoners at the Waupun Correctional Institution, *see* http://wisconsinwatch.org/2014/07/waupun-guard-named-repeatedly-in-abuse-complaints/). Defendants do not explain how specific lawsuits or articles relate to the individual defendants in this case, but at any rate, plaintiff did not respond to this particular motion.

Even without the parties explaining what specific pieces of evidence might be at issue, it is difficult to see how other lawsuits or newspaper articles would have probative value outweighing the potential for prejudice. This motion is GRANTED.

2. **Defendants' motion to exclude acts before the strip search, and**
3. **Defendants' motion to exclude issue regarding decision to conduct strip search**

Both of these motions relate to the scope of plaintiff's strip-search claims. In screening plaintiff's complaint, the court had allowed plaintiff to proceed on an excessive force claim regarding plaintiff's escort to segregation and a claim regarding the strip search. The excessive force claim was dismissed on exhaustion grounds. *See* Dkt. 35.

In their MIL No. 2, defendants seek an order "precluding testimony or argument claiming that any acts on January 1, 2013—other than the alleged improper conduct during the strip search—were acts of excessive force." In their MIL No. 3, defendants state, "Provided that Motion # 2 is granted, defendants move the court to clarify the only issue remaining for trial and exclude any argument that the decision to conduct a strip search was erroneous."

Although these two issues are interrelated, it makes more sense to ascertain the precise scope of plaintiff's claims before deciding what evidence regarding allegedly excessive force leading up to the search should be allowed, so I will address MIL No. 3 first.

As a starting point, a strip search violates the Eighth Amendment when it is conducted in a harassing manner with the intent to humiliate and inflict psychological pain rather than for legitimate prison purposes. Dkt. 10, at 8.

Defendants recognize that there are two aspects to the strip search claim: (1) the decision to perform a strip search (or more precisely in this case, whether to perform a visual-only search in which the prisoner takes off his own clothes and manipulates his own genitals, etc. versus a search where prison staff takes off a prisoner's clothes and manipulates the prisoner's body); and (2) whether the strip search was performed in an inappropriate way.

Judge Crabb's screening order focused on the first aspect:

> Plaintiff alleges that defendants Wenzel, Ross, Burns and Lobianco did not give him an opportunity to consent to a "regular" strip search before performing a "staff-assisted" search, which I interpret to mean a visual inspection instead of a manual one. In some circumstances failure to allow a prisoner to comply with a visual inspection before conducting a manual inspection could constitute an unreasonable strip search if there was no legitimate penological reason for proceeding directly to the more intrusive manual inspection. *Vasquez v. Raemisch*, 480 F. Supp. 2d 1120, 1131-32 (W.D. Wis. 2007) (granting leave to proceed on manual strip search where officers did not give plaintiff opportunity to consent to visual search and no allegations indicate legitimate reason preventing visual inspection). In other circumstances, it may not be reasonable to allow a prisoner to comply first, such as when a prisoner has been restrained for legitimate penological reasons and could not assist staff in performing a visual search. *Edwards v. Thurmer*, 08-CV-352-BBC, 2008 WL 2953974 (W.D. Wis. July 29, 2008) (denying leave to proceed where prisoner who had been trying to cut himself with razor was restrained with waist, hand and leg restraints and cuffed to a steel door).
>
> In this case, plaintiff had been restrained but, as discussed above, it is not clear from plaintiff's allegations whether there was any good reason for the

> restraint. It may turn out that the officers had good reason for handcuffing plaintiff in the first place; if so, then a subsequent manual strip search for placement in segregation is not improper. However, there is still some room to doubt whether plaintiff should have been handcuffed, and the benefit of that doubt must go to plaintiff at this very early stage. Therefore, plaintiff may proceed on his theory that defendants Wenzel, Burns and Lobianco performed an illegal search by failing to allow him a chance to assist with a visual inspection.

Dkt. 10, at 8-9. At summary judgment, it became clearer that plaintiff was alleging both (1) that the decision to perform a manual search violated the Constitution and (2) that Lo Bianco touched him inappropriately during the search. At that time, defendants did not argue that the scope of the screening order excluded the second theory. Rather, they conceded that plaintiff's story created a dispute of material fact.

In their MIL No. 3, defendants argue that because the excessive force claim was dismissed, "there is no longer a question of whether there was any legitimate penological reason for deciding to conduct a strip search" and that "the grant of summary judgment to defendants on that claim would be toothless."

The real question about the first theory is "Was there a penological reason to perform a staff-assisted search rather than a visual one?" If the court had ruled in defendants' favor on the substance of the excessive force claim, that could be used to argue that whatever rationale defendants had to use force on plaintiff was also a reason to perform the staff-assisted search. But the court did not rule on the substance of the excessive force claim; it was dismissed for failure to exhaust. So based solely on the arguments contained in defendants' MIL, there is no reason to grant the motion.

However, the parties go on to argue further. In plaintiff's own MIL No. 2 (an MIL that is not substantively about the visual search versus manual search issue), he argues, "To

4

some extent, Hamlin's conduct immediately preceding the strip search will be at issue, because Hamlin will argue that he should have been afforded the opportunity to participate in a visual strip search as opposed to a staff assisted strip search." Dkt. 88, at 2. Defendants respond to this argument by stating that "it is [their] position that there is no longer a question of whether there was any legitimate penological reason for deciding to conduct a strip search," citing the summary judgment opinion:

> Because a reasonable jury believing plaintiff's version of events could conclude that defendant Lo Bianco did not have a legitimate penological reason to conduct the manual strip search *in the manner he did*, defendants' motion for summary judgment must be denied with regard to defendant Lo Bianco.

Dkt. 92, at 2 (quoting Dkt. 60, at 8) (emphasis added by defendants). I am not persuaded by this argument because the cited language from the summary judgment order was not intended to foreclose the argument about the visual versus manual search issue. Rather, the summary judgment order reflected that the parties' briefing made it crystal clear that there was a disputed issue of material fact about the conduct of the search itself. Defendants conceded that if plaintiff's story was believed by the jury, it would have to find in plaintiff's favor. The aspect of the claim regarding the decision to perform a staff-assisted search in the first place continues to be a part of the case and plaintiff should be allowed to present evidence and argument about it.

Defendants add, "To permit argument regarding the decision to conduct a strip search, as opposed to a manual search, would involve a mini-trial on whether there was proper restraint rather than excessive force prior to the strip search." Dkt. 92, at 2-3. This is really more of a prudential argument about why the court should not allow discussion of the visual versus manual search issue and is closely related to the arguments defendants bring

with regard to their MIL No. 2. Defendants argue that "it is clear that [plaintiff] intends to argue that the events leading up to the strip search constituted excessive force. Hamlin argues that those events are relevant to the mindset of the officers when they conducted the strip search at issue on this case. But those arguments would impermissibly revive [the] excessive force claim that was dismissed at the summary judgment stage."

This is partially correct—plaintiff indeed argues that the events taking place during his escort are relevant to defendants' mindset during the strip search, but this does not mean that the excessive force claim is being revived. Defendants' actions during the escort[1] are relevant to *both* the excessive force and the strip search claims. As plaintiff put it, "The attitude and mindset of the defendants are central to this case, because the plaintiff must prove that the defendants acted in a harassing manner intended to humiliate and inflict psychological pain." Therefore, I will DENY defendants' motions in limine regarding this issue, subject to hearing from counsel at the final pretrial conference.

This means that the parties will be allowed to present evidence and argument explaining why defendant Wenzel[2] thought it was appropriate to perform a manual search rather than a visual one. Presumably, that evidence will touch on plaintiff's possession of contraband and the question whether plaintiff was compliant with staff during the escort. Defendants' concern about confusing the jury will be addressed by an instruction explaining that plaintiff's claims are limited to (1) Wenzel's decision to perform a manual search; (2)

---

[1] It appears to be undisputed at this point that only defendants Wenzel and Schouten were present for both the escort and the strip search.

[2] From the summary judgment materials, I understand defendants to be saying that defendant Wenzel authorized the "staff-assisted" strip search.

the manner in which Lo Bianco's manual search was performed; and (3) if plaintiff's Constitutional rights were violated by Wenzel or Lo Bianco, whether any of the other defendants could have intervened. The parties are encouraged to propose language for that instruction.

PLAINTIFF'S MOTIONS

Plaintiff has filed two motions in limine (Dkt. 87 and 88):

1. **Plaintiff's motion to appear in civilian clothing without visible shackles**

Although this lawsuit concerns events at the Waupun Correctional Institution, plaintiff is currently a federal prisoner. Plaintiff asks to (1) appear in civilian clothing without any visible shackles; (2) if further security is necessary, have plaintiff's legs shackled but kept out of the view of the jury; and (3) if he is shackled, that he be transported to and from the witness stand outside the presence of the jury. Defendants defer to the court.

The court's default position is that an incarcerated plaintiff would appear with civilian clothes and without any shackles, so unless there was a security-based reason to do so I would grant the motion. I will consult with the Marshals Service before making final ruling on this motion.

2. **Plaintiff's motion to exclude criminal history and current status as federal inmate**

According to plaintiff and my review of CCAP, plaintiff has two state of Wisconsin felony convictions for burglary (Dodge County Case No. 06CF271 and Jefferson County Case No. 06CF517). Plaintiff's probation was revoked in those cases after he was arrested for

possession of a pipe bomb. That arrest led to a conviction for possession of an unregistered firearm (which can be triggered by possession of a pipe bomb) in this court. He received a sentence of 84 months. *See* No. 09-cr-120-bbc.

Plaintiff seeks to exclude any reference to his criminal history or his current status as an inmate in federal prison. In briefing this motion, plaintiff discusses Fed. R. Evid. 609, and also ends up trying to frame the case as containing questions about whether he should have been given a visual strip search and more generally, his and defendants' conduct immediately before the search. Rather than explain whether they even plan to impeach plaintiff under Rule 609, defendants jump to a discussion regarding whether plaintiff should be allowed to discuss excessive force or the visual versus manual strip search issue. Plaintiff's motion is GRANTED, because his status as a person convicted of a serious crime will be apparent from the facts of this case. Any further information would be unduly prejudicial.

Entered March 10, 2015,

BY THE COURT:

/s/

JAMES D. PETERSON
District Judge